George W. WARNECKE, individually and as Executor of the Estate of Catherine M. Warnecke, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 64 Civ. 199.

United States District Court
S. D. New York.

June 7, 1966.

---

Sage, Gray, Todd & Sims, New York City, for plaintiff; George W. McGrath, Jr., of counsel.

Robert M. Morgenthau, U. S. Atty. Southern District of New York, for defendant; Laurence Vogel, Harvey R. Blau, Asst. U. S. Attys., of counsel.

LEVET, District Judge.

This is a tax refund suit brought by George W. Warnecke individually and as executor of the estate of his wife, Catherine M. Warnecke, to recover income taxes paid for the calendar years 1953, 1954 and 1955. The respective amounts sought are $2,243.05, $23,356.38 and $24,593.73 for a total of $50,193.16, with interest.

After hearing the testimony of the parties, examining the exhibits, pleadings, briefs and Proposed Findings of Fact and Conclusions of Law submitted by counsel, this court makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1. Catherine M. Warnecke at all times hereinafter mentioned until her death on July 27, 1954, was the wife of the plaintiff, George W. Warnecke. On or about August 20, 1954, plaintiff, George W. Warnecke, was appointed executor of the will of said Catherine M. Warnecke by decree of the Surrogate's Court, County and State of New York, and said plaintiff, George W. Warnecke, since said date has been and now is acting as such executor.

2. On March 12, 1954, George W. Warnecke and Catherine M. Warnecke duly filed their joint Federal income tax return on Form 1040 covering the calendar year 1953, in which they claimed a deduction for depreciation with respect to the Paul Brown Building in the amount of $119,237.50. Upon examination of said return for 1953, the Commissioner of Internal Revenue disallowed $15,893.33 of said amount and assessed income taxes against plaintiff for 1953 in the amount of $2,243.05.

3. On March 22, 1955, George W. Warnecke individually and as executor of the will of Catherine M. Warnecke, duly filed a joint federal income tax return on Form 1040 covering the calendar year 1954, in which he claimed a deduction for depreciation with respect to the Paul Brown Building in the amount of $238,-275.24. Upon examination of said return for 1954, the Commissioner of Internal Revenue disallowed $35,222.83 of said amount and assessed additional income taxes against plaintiff in the amount of $26,224.86, of which plaintiff demands a refund in this action of $23,-356.38.

4. On April 14, 1956, George W. Warnecke duly filed his Federal income tax return on Form 1040 covering the calendar year 1955, in which he claimed a deduction for depreciation with respect to the Paul Brown Building in the amount of $229,765.41. Upon examination of said return for 1955, the Commissioner of Internal Revenue disallowed $33,964.88 of said amount and assessed additional income taxes against plaintiff in the amount of $27,537.20, of which plaintiff demands the refund in this action of $24,593.73.

5. George W. Warnecke purchased the Paul Brown Building, the land underlying it, and the equipment contained in the building on July 3, 1953 and continued to own the property during all the relevant periods involved herein. The Paul Brown Building, a high rise multioffice building with retail stores on the ground floor and offices above, is located at 814 Olive Street, in the downtown business district of St. Louis, Missouri.

6. In 1953, the downtown section of St. Louis was the financial center and central portion of the City and County of St. Louis; the area contained the largest banks, the main Post Office, Federal Customs House, the Civil Courts

Building, the City Hall, the Federal Reserve Bank, a number of leading motion picture houses and legitimate stage theatres, the leading department stores, and the major office buildings.

7. Prior to purchasing the Paul Brown Building, plaintiff, George W. Warnecke, personally inspected the interior and exterior of the building, the equipment, the state of repairs, and on the basis of this knowledge paid the sum of $4,239,555.78, of which $3,600,000 was represented by a first mortgage, as the purchase price of the said building.

8. The Paul Brown Building was constructed in 1927; two of its floors were not completed until 1942; the construction was steel and concrete. On the south 40% of the ground floor area was a building sixteen stories in height; on the north, 60% of the ground floor area was a building twelve stories in height. The exterior walls of the first three floors were faced with terra cotta; above they were faced with brick. The first floor lobby floor and walls were marble; above the ground floor the walls of the corridors were of marble slab with marble baseboard. Walls and ceiling were plaster finish. The interior of the offices contained maple floors, standup type radiators, incandescent direct and indirect lighting fixtures, wood baseboards, windows and door trim. The building was served by eight Otis passenger elevators, one of which was used for freight. Approximately 40% of the building was air conditioned.

9. In 1953, the Paul Brown Building was the newest and considered to be the leading office building in downtown St. Louis. The plaintiff, George W. Warnecke, testified as to the building's physical condition in 1953. From that testimony it is fair to say that the building was in need of certain repairs and that some of its facilities and construction were not of the most modern type; however, it also appears that none of the other buildings in St. Louis was more modern than the Paul Brown Building. Between 1927 and 1953 no new office buildings were constructed in St. Louis, and in 1953 none was being planned. In fact, no new office buildings were constructed until 1964.

10. In 1953 the average age of thirty-one office buildings in the downtown business section of St. Louis was approximately forty-seven years; all were then in operation. Even in the year 1966, except for three buildings which were taken by condemnation, the remainder are still operating.

11. In 1953 the Paul Brown Building represented the highest and best use of the underlying land. The future use of the neighborhood as the center of business activity in St. Louis was well defined, and land values were stable.

12. Harold F. Enright, a witness called by the plaintiff, testified that in his opinion the useful life of the Paul Brown Building in 1953 was twenty years, and the plaintiff, George W. Warnecke, who is, of course, an interested party, testified in like manner. A witness called by the defendant, one Arthur A. Schneider, testified that in his opinion the useful life of the Paul Brown Building in 1953 was thirty years.

13. I find that the testimony of Enright is not convincing. I find that the testimony of Warnecke as an interested owner and in itself is not persuasive. I, therefore, find that the plaintiff has not proved by a fair preponderance of the credible evidence that the determination of the Commissioner of Internal Revenue, that the remaining useful life of the plaintiff's building as of 1953 was twenty-five years, is erroneous. I find that the remaining useful life of the plaintiff's building as of 1953 was at least twenty-five years.

14. The real estate expert called by the defendant, Arthur A. Schneider, is a life long resident of St. Louis who has spent all of his working years in the downtown area in which the Paul Brown Building is located. I find Schneider to be a believable witness. In Schneider's opinion, as stated above, the useful life of the Paul Brown Building was a minimum of thirty years from 1953.

## DISCUSSION

The sole issue involved in this case is whether, pursuant to Section 23(1) of the Internal Revenue Code of 1939 and Section 167 of the Internal Revenue Code of 1954, a reasonable allowance for depreciation on the Paul Brown Building should be computed on the basis of a twenty year remaining useful life, as claimed by the taxpayer, or of a twenty-five year life, as determined by the Commissioner of Internal Revenue. On this issue, the taxpayer has the burden of proving that the Commissioner's determination is erroneous. Southeastern Bldg. Corp. v. Commissioner of Internal Revenue, 148 F.2d 879, 160 A.L.R. 1245 (5th Cir. 1945).

The relevant considerations for determining the useful life of an asset are set forth in Treas. Reg. § 1.167(a)–1(b), which provides as follows:

"(b) Useful life. For the purpose of section 167 the estimated useful life of an asset is not necessarily the useful life inherent in the asset but is the period over which the asset may reasonably be expected to be useful to the taxpayer in his trade or business or in the production of his income. This period shall be determined by reference to his experience with similar property taking into account present conditions and probable future developments. Some of the factors to be considered in determining this period are (1) wear and tear and decay or decline from natural causes, (2) the normal progress of the art, economic changes, inventions, and current developments within the industry and the taxpayer's trade or business, (3) the climatic and other local conditions peculiar to the taxpayer's trade or business, and (4) the taxpayer's policy as to repairs, renewals, and replacements. Salvage value is not a factor for the purpose of determining useful life. If the taxpayer's experience is inadequate, the general experience in the industry may be used until such time as the taxpayer's own experience forms an adequate basis for making the determination. * * * "

Three witnesses, namely, the plaintiff, George W. Warnecke, the plaintiff's expert, Harold F. Enright, and the defendant's expert, Arthur A. Schneider, purported to evaluate these criteria and gave their opinions as to the useful life of the Paul Brown Building in 1953.

The plaintiff and Enright both stated that the useful life in 1953 of the Paul Brown Building was twenty years. The plaintiff's testimony was that of an interested witness and by itself did not persuade me. Moreover, I find little corroboration for the plaintiff's testimony in the testimony of Enright or in the testimony of the defendant's expert, Schneider.

## ENRIGHT AND HIS TESTIMONY

Enright resides not in St. Louis but in Chicago, Illinois. Although he has been prominent in Chicago real estate matters, has made appraisals in Illinois and elsewhere, and is a member of the American Institute of Real Estate Appraisers, his knowledge of the Paul Brown Building and of St. Louis was exceedingly meager.

His observations were confined to two or three days in January, 1965. He knew very little of the income of St. Louis buildings. He was unable to identify various downtown St. Louis buildings. He did not recall what sales in St. Louis in 1953 he did take into consideration in forming his opinion. He had no memoranda about sales. Although he considered comparative rentals from other buildings, he accumulated no data in writing. He merely discussed rentals with one Hawkinson who did not come to St. Louis until 1960. He was not aware of the types of elevators in other buildings in St. Louis in 1953. He did not know how other buildings in St. Louis compared to the Paul Brown Building in terms of electric current, but he took electric current into account in formulating his opinion. In general, Enright failed to compare the Paul Brown Building with the other buildings in St. Louis

and failed to give positive weight to the building's good comparative status.

Enright also never knew maintenance expenses of the Paul Brown Building for 1952, nor its gross income for 1951, 1952, 1950, or 1949. He did not consider the building's earnings from 1949 to 1952 in forming his opinion, but he did consider expenses for 1954 through 1964, although this was after the fact. He did not know whether the rentals in the Paul Brown Building increased or decreased between 1949 and 1953.

Enright's testimony, furthermore, was vacillating. He was uncertain as to whether the amount paid for the property by Warnecke or economic return affected the problem of useful life. He shifted from position to position with respect to whether the sales market is to be considered in determining the remaining useful life.

All in all, it is apparent that Enright made only a superficial study of the problem of useful life of the Paul Brown Building. He never became even fairly acquainted with the building, the area, the City of St. Louis, the competing buildings, the elements of income and maintenance, the essential principles necessary for his task. I, therefore, am unable to accept his opinion or find that it has any force to corroborate the plaintiff's opinion.

## SCHNEIDER AND HIS TESTIMONY

Arthur A. Schneider, the expert witness presented by the defendant, resides in St. Louis, is sixty-six years of age, is a real estate broker and appraiser and has been so engaged for forty-nine years. His practice of appraisal has chiefly covered the St. Louis area. He has appraised industrial, commercial and other types of real estate for a variety of organizations.

Schneider saw the Paul Brown Building when it was being built and has been familiar with it and the general area of downtown St. Louis since that time. At the request of the United States he made a physical inspection of the building in 1965. He was also personally familiar with the building in 1953. Furthermore, he has participated in the valuation of other buildings in St. Louis.

Schneider's testimony revealed an intimate knowledge of the Paul Brown Building, its competitors, and the St. Louis area in general. His complete report, including his opinion as to the useful life of the Paul Brown Building, is contained in Exhibit C. He appears to have considered the relevant factors, namely, the actual physical decay of the building, obsolescence in the building because of changes in office building design, and local economic factors affecting useful life. I am convinced that his conclusions are reasonably correct.

The plaintiff claims that Schneider's testimony supports a twenty-year life, and not the thirty-year life to which Schneider testified. Specifically, plaintiff takes Schneider's testimony that physical depreciation amounted to 45% and that obsolescence amounted to an additional 40% as of 1953 [a total depreciation of 67% (45% plus 40% (55%)= 67%] and claims that even if the total useful life of the Paul Brown Building had been sixty years as of 1927, only slightly less than twenty years of useful life would remain in 1953 on the basis of a depreciation of 67%. There is a simple answer to this argument. The above percentages were used in valuation of the land and building on a cost approach as of 1953. That approach is only one method of determining valuation and useful life, and different from the income approach relied on by Schneider in forming his opinion. Moreover, the mere statement that a building has depreciated 67% overlooks the competition and the building's comparative status, which are crucial considerations in this case.

Plaintiff also claims that Schneider's opinion is based on an erroneous assumption that additions and improvements would have to be made to keep the building in a competitive status. Plaintiff claims that such improvements may not be considered in determining useful life. Under the regulations, the taxpayer's

policy as to repairs, renewals, and replacements may be considered in determining useful life. Here there is specific testimony of the plaintiff that he "contemplate[d] doing some work in the building." With such testimony, I see no reason for discounting Schneider's opinion. In any event, even if Schneider's opinion is not considered, I find no basis in the record for concluding that the plaintiff has proved by a fair preponderance of the evidence that the useful life of the Paul Brown Building was twenty years in 1953.

## CONCLUSIONS OF LAW

1. This court has jurisdiction over this action by virtue of 26 USC § 1346.

2. The plaintiff has failed to meet his burden of proving that the Commissioner was incorrect in estimating that the Paul Brown Building had a useful life of twenty-five years as of 1953, twenty-four years as of 1954 and twenty-three years as of 1955.

3. The defendant is entitled to judgment dismissing the complaint on the merits with costs.

Settle judgment on notice.